UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CASSANDRA BAKER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CASSAVA SCIENCES, INC., REMI BARBIER and ERIC J. SCHOEN,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Cassandra Baker ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Cassava Sciences, Inc. ("Cassava" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial, additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**NATURE OF THE ACTION**

1.      This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired Cassava securities between August 18, 2022 and October 12, 2023, both dates inclusive (the "Class Period"), seeking

1

to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2. Cassava is a clinical-stage biotechnology company. The Company's lead therapeutic drug candidate is PTI-125 (or "simufilam"), a small molecule drug for the proposed treatment of Alzheimer's disease.

3. In March 2020, Cassava initiated a long-term, open-label study to evaluate the long-term safety and tolerability of simufilam 100 mg twice daily for 12 or more months in patients with Alzheimer's disease and to assess exploratory efficacy endpoints, such as changes in cognition, and biomarkers.

4. Then, in August 2021, a Citizen Petition requested the U.S. Food & Drug Administration ("FDA") to halt any phase 3 trials of simufilam due to concerns regarding data manipulation. Specifically, the Citizen Petition referenced "grave concerns about the quality and integrity of the laboratory-based studies surrounding this drug candidate and supporting the claims for its efficacy."

5. However, in response, Cassava denied the allegations in the Citizen Petition and instead touted the effectiveness of simufilam and the efficacy of the Company's research programs. Indeed, in a press release published shortly after the FDA received the Citizen Petition, Cassava stated that "[t]he Company stands behind its science, its scientists and its scientific collaborators." Thereafter, Cassava continued to maintain its defense of simufilam even as criticisms of simufilam were revealed from additional sources and academic journals such as *Neurobiology of Aging* and the *Journal of Neuroscience* issued "expressions of concern" regarding the efficacy of the drug.

2

6. Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the Company failed to maintain adequate and effective data management controls and procedures related to its drug research programs; (ii) as a result, the data published in support of simufilam were susceptible to manipulation to overstate the drug's effectiveness; (iii) accordingly, Cassava had misrepresented the efficacy of its research programs and the clinical and/or commercial prospects of simufilam; (iv) all of the foregoing, once revealed, was likely to subject the Company to significant financial and/or reputational harm; and (v) as a result, the Company's public statements were materially false and misleading at all relevant times.

7. On October 12, 2023, the peer-reviewed academic journal *Science* reported that Professor Hoau-Yan Wang ("Dr. Wang"), a City University of New York ("CUNY") researcher associated with the research program for simufilam, had been investigated by university officials for possible data manipulation. Although the investigative committee did not have access to the raw data at issue and thus was unable to confirm that data manipulation had occurred, members made their conclusion based on "long-standing and egregious misconduct in data management and record keeping by Dr. Wang" and "found evidence highly suggestive of deliberate scientific misconduct" by Dr. Wang.

8. On this news, Cassava's stock price fell $2.68 per share, or 15.28%, to close at $14.86 per share on October 13, 2023.

9. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

**JURISDICTION AND VENUE**

10. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

11. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

12. Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b). Pursuant to Cassava's most recently filed Quarterly Report with the SEC, as of November 2, 2023, there were 42,174,062 shares of the Company's common stock outstanding. Cassava's securities trade on the Nasdaq Capital Market ("NASDAQ"). Accordingly, there are presumably hundreds, if not thousands of investors in Cassava securities located within the U.S., some of whom undoubtedly reside in this Judicial District. In addition, Plaintiff resides in this Judicial District.

13. In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

**PARTIES**

14. Plaintiff, as set forth in the attached Certification, acquired Cassava securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

15. Defendant Cassava is a Delaware corporation with principal executive offices located at 6801 N. Capital Of Texas Highway, Building 1, Suite 300, Austin, Texas, 78731.

4

Cassava's common stock trades in an efficient market on the NASDAQ under the ticker symbol "SAVA".

16. Defendant Remi Barbier ("Barbier") has served as Cassava's Chairman, President, and Chief Executive Officer at all relevant times.

17. Defendant Eric J. Schoen ("Schoen") has served as Cassava's Chief Financial Officer at all relevant times.

18. Defendants Barbier and Schoen are sometimes referred to herein as the "Individual Defendants."

19. The Individual Defendants possessed the power and authority to control the contents of Cassava's SEC filings, press releases, and other market communications. The Individual Defendants were provided with copies of Cassava's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected. Because of their positions with Cassava, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements and omissions pleaded herein.

20. Cassava and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

21. Cassava is a clinical-stage biotechnology company. The Company's lead therapeutic drug candidate is simufilam, a small molecule drug for the proposed treatment of Alzheimer's disease.

### Materially False and Misleading Statements Issued During the Class Period

22. The Class Period begins on August 18, 2022, when Cassava issued a press release entitled "No Evidence of Data Manipulation in Science Publication on Simufilam." The press release stated, in relevant part:

> Cassava [. . .] was recently informed by the *Journal of Prevention of Alzheimer's Disease* (JPAD) that there is no convincing evidence to support allegations of data manipulation in a 2020 paper on simufilam co-authored by the Company's personnel and its science collaborators.
>
> \*\*\*
>
> "From the onset, I have said that allegations of research misconduct are false, and for good reason – I see no supporting evidence for the allegations," said [Defendant] Barbier[.] "I'm hopeful that written pronouncements from neutral and independent science experts will help close the chapter of baseless attacks against our science. At some point it becomes irrational for our detractors to repeat over and over again the same old tired mantra of data manipulation."
>
> \*\*\*
>
> A related investigation by academic authorities at The City University of New York (CUNY) is ongoing. Pending a public response from CUNY, both *Neurobiology of Aging* and *Journal of Neuroscience* previously issued an outstanding "expression of concern", which is a non-standardized type of editorial notice used by academic publishers to raise awareness to a possible problem, according to the Council of Science Editors (2012).

23. On November 7, 2022, Cassava issued a press release announcing the Company's Q3 2022 financial results. The press release stated, in relevant part:

6

> "The clinical development of oral simufilam for Alzheimer's disease continues to make headway," said [Defendant] Barbier[.] "We now have over 650 patients enrolled in our on-going Phase 3 studies of simufilam in Alzheimer's disease, up from 150 patients approximately six months ago. We also look forward to presenting new clinical data for simufilam from two other ongoing studies in Alzheimer's disease."

24. On January 24, 2023, Cassava issued a press release entitled "Cassava Sciences Announces Positive Top-Line Clinical Results in Phase 2 Study Evaluating Simufilam in Alzheimer's Disease." The press release stated, in relevant part:

> Cassava [. . .] today announced positive top-line Phase 2 results for simufilam, its oral drug candidate for Alzheimer's disease dementia. This was an open-label safety study with exploratory efficacy endpoints. The study enrolled over 200 patients with mild-to-moderate Alzheimer's disease (MMSE 16-26). Study participants were administered open-label simufilam tablets 100mg twice daily for 1 year or more. Endpoints were measured at baseline (study entry) and month 12.
>
> ***
>
> "I'm very excited about these 1-year data," said [Defendant] Barbier[.] "They add strength and determination to our goal of helping people fight Alzheimer's disease. Simufilam is an innovative drug candidate that we are developing methodically, one study at a time, and this open-label safety study served its purpose. Next up in 2023 are top-line clinical results of our Cognition Maintenance Study, which is a randomized, controlled trial."

25. On February 28, 2023, Cassava issued a press release announcing the Company's full year 2022 financial results and operating updates. The press release stated, in relevant part:

> "Setting aside headwinds, 2022 was highlighted by positive developments with patient enrollment in our Phase 3 clinical studies of simufilam in Alzheimer's disease", said [Defendant] Barbier[.] "Over 1,000 patients with Alzheimer's are now enrolled in these two studies. By year-end 2023, we expect to reach our enrollment target of approximately 1,750 patients for the Phase 3 studies. Recently, we announced top-line results for an open-label study. In this study, over 200 mild-to-moderate Alzheimer's patients were treated with simufilam for a year. Simufilam was well-tolerated, 47% of patients improved on ADAS-Cog scores over 12 months and an additional 23% of patients declined less than 5 points on ADAS-Cog. I believe these are noteworthy trial results, even as I am keenly aware that the gold standard in Alzheimer's research requires results from randomized, controlled studies."

26. That same day, Cassava filed an Annual Report on Form 10-K with the SEC, reporting the Company's financial and operational results for the fiscal year ended December 31, 2022 (the "2022 10-K"). In providing an overview of the Company, the 2022 10-K stated, in relevant part:

> Cassava [. . .] is a clinical-stage biotechnology company based in Austin, Texas. Our mission is to detect and treat neurodegenerative diseases, such as Alzheimer's disease. Our novel science is based on stabilizing – but not removing – a critical protein in the brain. Our lead therapeutic drug candidate, simufilam, is being evaluated for the proposed treatment of Alzheimer's disease dementia in Phase 3 clinical studies.
>
> Over the past 10 years, we have combined state-of-the-art technology with new insights in neurobiology to develop novel solutions for Alzheimer's disease and other neurodegenerative diseases. Our strategy is to leverage our unique scientific/clinical platform to develop a first-in-class program for treating neurodegenerative diseases, such as Alzheimer's.
>
> \*\*\*
>
> Our scientific approach for the treatment of Alzheimer's disease seeks to simultaneously suppress both neurodegeneration and neuroinflammation. We believe our ability to improve multiple vital functions in the brain represents a new, different and crucial approach to address Alzheimer's disease.
>
> Our lead product candidate, simufilam, is a proprietary small molecule (oral) drug. Simufilam targets an altered form of a protein called filamin A (FLNA) in the Alzheimer's brain. Published studies have demonstrated that the altered form of FLNA causes neuronal dysfunction, neuronal degeneration and neuroinflammation. We are currently conducting a Phase 3 program with simufilam in patients with mild-to-moderate Alzheimer's disease dementia.
>
> We believe simufilam improves brain health by reverting altered FLNA back to its native, healthy conformation, thus countering the downstream toxic effects of altered FLNA. We have generated and published experimental and clinical evidence of improved brain health with simufilam. Importantly, simufilam is not dependent on clearing amyloid from the brain. Since simufilam has a unique mechanism of action, we believe its potential therapeutic effects may be additive or synergistic with those of other therapeutic candidates aiming to treat neurodegeneration.

27. Further, in discussing the Company's scientific approach, the 2022 10-K stated, in relevant part:

> Our scientific approach is to treat neurodegeneration by targeting an altered form of a scaffold protein called FLNA. Through years of basic research, we and our academic collaborators identified FLNA as a structurally altered protein that enables both a neurodegeneration and a neuroinflammation pathway in the Alzheimer's brain. We have shown that the altered form of FLNA is pervasive in the Alzheimer's brain and undetectable in healthy control brains.
>
> Using scientific insight and lab techniques, we believe we have elucidated this protein dysfunction. Through this work, we have produced experimental evidence that altered FLNA plays a critical role in Alzheimer's disease. We engineered a family of high-affinity, small molecules to target this structurally altered protein and restore its normal shape and function. This family of small molecules, including our lead therapeutic candidate, simufilam, was designed in-house and characterized by our academic collaborators.
>
> ***
>
> Given the biopharmaceutical industry's challenging track record in Alzheimer's research, we believe there is an urgent need to consider innovative approaches to combat this disease. We believe our scientific approach may broaden the range of possible treatment approaches for this complex disease.

28. In addition, in discussing the Company's development team, the 2022 10-K stated, in relevant part, that "[o]ur product development team is led by seasoned professionals with a proven track record of innovation in drug discovery and development, as well as substantial business expertise."

29. Finally, in discussing the Company's strategy, the 2022 10-K stated, in relevant part:

> Our goal is to develop product candidates to diagnose and treat neurodegeneration, such as Alzheimer's disease. Key elements of our business strategy to achieve this mission include:
>
> - building a lean company that is narrowly focused on developing innovative product candidates for Alzheimer's disease and other areas of neurodegeneration;

9

- validating our unique scientific approach with competitive research grants and publishing our scientific data in peer-reviewed journals;

- applying our development capabilities to advance our product candidates through clinical proof-of-concept studies and beyond;

- using our expertise and experience to continue to focus on discovering new indications and product candidates, validated by experimental evidence and leading experts in the field; and

- continuing to outsource preclinical studies, clinical studies and formulation development activities in order to allow more efficient deployment of our resources

30. Appended to the 2022 10-K as an exhibit was a signed certification pursuant to Sarbanes Oxley Act by the Individual Defendants, attesting that "[t]he information contained in [the 2022 10-K] fairly presents, in all material respects, the financial condition and results of operations of the Company."

31. On May 1, 2023, Cassava issued a press release announcing the Company's Q1 2023 financial results. The press release stated, in relevant part:

> "In Q1 2023, we announced results of a one-year, open-label Phase 2 safety study of simufilam in over 200 patients with Alzheimer's disease," said [Defendant] Barbier[.] "The dataset for this study shows long-term safety for simufilam. Notably, the data also show differences in changes in ADAS-Cog scores in mild and moderate subgroups. *We believe this is an encouraging result, as it clearly shows an improvement in ADAS-Cog over 1 year in mild patients taking simufilam that is well outside the expected range of historical placebo decline from numerous other studies*."

32. On July 5, 2023, Cassava issued a press release entitled "Oral Simufilam Slowed Cognitive Decline in a Randomized Withdrawal Trial of Mild-to-Moderate Alzheimer's Disease." The press release stated, in relevant part:

> "Patients started out taking open-label simufilam for 12 months prior to enrolling in the CMS," said [Defendant] Barbier[.] "CMS patients on placebo were, in effect, withdrawn from simufilam for 6 months. This placebo arm declined while the CMS arm randomized to simufilam improved. *We believe the emerging separation of cognitive scores between these two arms represents a drug effect*."

10

33. On August 3, 2023, Cassava issued a press release announcing the Company's Q2 2023 financial results. The press release stated, in relevant part:

> "In July 2023, we announced clinical results of a randomized controlled trial with oral simufilam in over 150 patients with Alzheimer's disease," said [Defendant] Barbier[.] "*In this study simufilam treatment for 6 months slowed cognitive decline by 38% versus placebo over six-month in patients with mild-to-moderate Alzheimer's disease. In addition, oral simufilam continues to be safe, well-tolerated. We believe these clinical results are noteworthy*."

34. The statements referenced in ¶¶ 22-33 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the Company failed to maintain adequate and effective data management controls and procedures related to its drug research programs; (ii) as a result, the data published in support of simufilam were susceptible to manipulation to overstate the drug's effectiveness; (iii) accordingly, Cassava had misrepresented the efficacy of its research programs and the clinical and/or commercial prospects of simufilam; (iv) all of the foregoing, once revealed, was likely to subject the Company to significant financial and/or reputational harm; and (v) as a result, the Company's public statements were materially false and misleading at all relevant times.

## The Truth Emerges

35. On October 12, 2023, the peer-reviewed academic journal *Science* published an article entitled "Co-developer of Cassava's potential Alzheimer's drug cited for 'egregious misconduct'". The article stated, in relevant part:

> Cassava Sciences, a biotech company whose work on the experimental Alzheimer's drug simufilam has been heavily criticized and is the subject of ongoing federal probes, has suffered another blow. A much-anticipated investigation by the City University of New York has accused neuroscientist Hoau-Yan Wang, a CUNY faculty member and longtime Cassava collaborator, of scientific misconduct

11

involving 20 research papers. Many provided key support for simufilam's jump from the lab into clinical studies and, given the CUNY report, some scientists are now calling for the two ongoing trials to be suspended.

The investigative committee found numerous signs that images were improperly manipulated, for example in a 2012 paper in *The Journal of Neuroscience* that suggested simufilam can blunt the pathological effects of beta amyloid, a protein widely thought to drive Alzheimer's disease. It also concluded that Lindsay Burns, Cassava's senior vice president for neuroscience and a co-author on several of the papers, bears primary or partial responsibility for some of the possible misconduct or scientific errors.

The committee could not prove its suspicions, however, because Wang did not produce the original raw data. Instead, the panel says its finding of wrongdoing was based on "long-standing and egregious misconduct in data management and record keeping by Dr. Wang."

The 50-page report obtained by *Science* says the scientist failed to turn over to the panel "even a single datum or notebook in response to any allegation" and cites "Wang's inability or unwillingness to provide primary research materials to this investigation" as a "deep source of frustration."

\*\*\*

The CUNY investigation into Wang began in the fall of 2021, in response to allegations from other investigators that were forwarded by the Office of Research Integrity (ORI), the federal entity that oversees work funded by the National Institutes of Health. NIH provided millions of dollars for work by Wang and Burns, including about $1.2 million to Wang since December 2020.

36. On this news, Cassava's stock price fell $2.68 per share, or 15.28%, to close at $14.86 per share on October 13, 2023.

37. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## SCIENTER ALLEGATIONS

38. During the Class Period, Defendants had both the motive and opportunity to commit fraud. They also had actual knowledge of the misleading nature of the statements they

12

made, or acted in reckless disregard of the true information known to them at the time. In so doing, Defendants participated in a scheme to defraud and committed acts, practices, and participated in a course of business that operated as a fraud or deceit on purchasers of the Company's securities during the Class Period.

## **PLAINTIFF'S CLASS ACTION ALLEGATIONS**

39. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Cassava securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

40. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Cassava securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Cassava or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

41. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

42. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

43. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Cassava;

- whether the Individual Defendants caused Cassava to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Cassava securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

44. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

45. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Cassava securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Cassava securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

46. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

47. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## **COUNT I**

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

48. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

49. This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

50. During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Cassava securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Cassava securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

51. Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Cassava securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Cassava's finances and business prospects.

52. By virtue of their positions at Cassava, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose

16

such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

53. Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of Cassava, the Individual Defendants had knowledge of the details of Cassava's internal affairs.

54. The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Cassava. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Cassava's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Cassava securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Cassava's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Cassava securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

55. During the Class Period, Cassava securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Cassava securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Cassava securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Cassava securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

56. By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

57. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

58. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

59. During the Class Period, the Individual Defendants participated in the operation and management of Cassava, and conducted and participated, directly and indirectly, in the conduct of Cassava's business affairs. Because of their senior positions, they knew the adverse non-public information about Cassava's misstatement of income and expenses and false financial statements.

60. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Cassava's financial condition and results of operations, and to correct promptly any public statements issued by Cassava which had become materially false or misleading.

61. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Cassava disseminated in the marketplace during the Class Period concerning Cassava's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Cassava to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of Cassava within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Cassava securities.

62. Each of the Individual Defendants, therefore, acted as a controlling person of Cassava. By reason of their senior management positions and/or being directors of Cassava, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Cassava to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Cassava and possessed the

power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

63. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Cassava.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: February 2, 2024

Respectfully submitted,

POMERANTZ LLP

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com

*Attorneys for Plaintiff*