UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CASSANDRA BAKER, individually and on behalf of all others similarly situated, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 24 C 977 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| CASSAVA SCIENCES, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

On February 2, 2024, Cassandra Baker filed a putative class action complaint against
Cassava Sciences, Inc., its Chairman, President, and Chief Executive Officer, Remi Barbier, and
its Chief Financial Officer, Eric Schoen (collectively, "Cassava"), alleging violations of the
Securities Exchange Act, 15 U.S.C. § 78a *et seq.*, for making false statements in press releases
and other company statements related to the study of Cassava's Alzheimer's-treating drug,
simufilam. Pursuant to the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. §
74u–4, Baker also published notice of this action to invite other investors to join the litigation.
On March 20, 2024, Mohammad Bozorgi, the Lead Plaintiff in a class action against Cassava in
the Western District of Texas, No. 21 C 751 ("*Cassava I*"), moved to intervene in this case
("*Cassava II*"). Bozorgi contends that *Cassava I* deals with the same underlying
misrepresentation that Baker alleges in her complaint and is therefore the appropriate vehicle to
advance Baker's claims, and requests that the Court transfer this case to the Western District of
Texas so that the presiding judge in *Cassava I* can consolidate them. Bozorgi also asks the Court
to vacate the April 2, 2024 lead plaintiff deadline. Baker opposes all aspects of Bozorgi's
motion, arguing that he did not timely file his motion to intervene and lacks an interest in this

case given its non-overlapping class period. Cassava takes no stance on Bozorgi's motion and indicates that it will move to dismiss the complaint regardless of venue. Because the Court finds that Bozorgi timely filed his motion to intervene and has a cognizable interest in this litigation, it grants his motion to intervene. The Court also grants Bozorgi's motion to transfer this case to the Western District of Texas. However, because the Court is relinquishing control over this case, it will leave to the transferee court's judgment whether to vacate Baker's publication of a PSLRA notice.

**BACKGROUND**

I.      **Cassava and Simufilam**

Cassava is a Delaware corporation headquartered in Austin, Texas. Cassava is a biotechnology company with its chief focus on creating a small molecule drug to treat Alzheimer's disease. Cassava began a long-term study of this drug, known as simufilam, in March 2020 to evaluate its effectiveness in treating symptoms in Alzheimer's patients over time. However, on August 24, 2021, the Food and Drug Administration received a Citizen Petition requesting that the agency halt future research into simufilam because of "***grave concerns*** about the quality and integrity of the laboratory-based studies surrounding this drug candidate and supporting the claims for its efficacy." *Cassava I*, No. 21 C 751, Doc. 68 ¶ 12 (W.D. Tex. Aug. 18, 2022). The Citizen Petition accused Cassava and Dr. Hoau-Yan Wang, the company's primary researcher, of manipulating and falsifying data in academic publications to bolster the scientific case for commercially developing simufilam. On August 25, 2021, Cassava's share price fell from $117.83 per share to $80.86 per share, a drop of 31.38%. Cassava's stock continued to trade down in the following days and weeks despite its efforts to reassure the market of the legitimacy of its simufilam studies.

2

## II.    *Cassava I* Procedural History and Factual Background

On August 27, 2021, Pierre Brazeau filed suit against Cassava in the Western District of Texas alleging violations of the Securities Exchange Act related to its allegedly false statements about simufilam.  Under the Securities Exchange Act, as amended by the PSLRA, private litigants initiating securities litigation must publish notice of recent lawsuits to give other investors the opportunity to join the case and receive "Lead Plaintiff" status.  The "Lead Plaintiff" is "the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members."  *Id.* § 74u–4(a)(B)(i). After the court appoints a Lead Plaintiff, that person(s) is responsible for asserting the class plaintiffs' claims.

After extensive motion practice, Judge David Ezra appointed Bozorgi Lead Plaintiff in the consolidated action, noting that he lost approximately $1,539,508 during the longest-pleaded class period.  Judge Ezra also ordered the consolidation of all future-filed cases filed in the Western District of Texas that "arise out of the same facts and claims" and instructed the "parties [to] notify the Court of any other action that is pending or filed outside of" the Western District of Texas.  *Cassava I*, No. 21 C 751, Doc. 58 (W.D. Tex. June 30, 2022).

Following his appointment as Lead Plaintiff, Bozorgi filed a consolidated complaint.  In it, he pleaded a class period ranging from September 14, 2020, through July 26, 2022, inclusive.

## III.   Cassava's Post-August 2022 Publications and the October 2023 *Science* Article

In the face of *Cassava I*, Cassava continued to publicly defend its simufalim studies.  On August 18, 2022, November 7, 2022, January 24, 2023, February 28, 2023, May 1, 2023, July 5, 2023, and August 3, 2023, Cassava made various statements avowing its confidence in the integrity of the simufilam studies and touting the results of additional simufilam research in the

form of press releases, announcements of quarterly financial results, and the publication of its 2022 Form 10-K.  For example, on August 18, 2022, Cassava shared reporting from the *Journal of Prevention of Alzheimer's Disease* "that there is no convincing evidence to support allegations of data manipulation in a 2020 paper on simufilam co-authored by the Company's personnel and its science collaborators."  Doc. 1 ¶ 22 (N.D. Ill. Feb. 2, 2024).  Additionally, on August 3, 2023, Cassava stated in a press release that in a recent "study simufilam treatment for 6 months slowed cognitive decline by 38% versus placebo over six-month in patients with mild-to-moderate Alzheimer's disease.  In addition, oral simufilam continues to be safe, well-tolerated.  We believe these clinical results are noteworthy."  *Id.* ¶ 33 (emphasis omitted).

Cassava's optimism in the integrity of its research did not convince everyone.  On October 12, 2023, the journal *Science* published an article accusing Dr. Wang of "egregious misconduct."  *Id.* ¶ 35.  The article, reporting on a City University of New York ("CUNY") investigation into Dr. Wang's conduct, claimed that twenty research papers, many of which involved simufilam, contained data integrity and recordkeeping issues.  The article noted that Dr. Wang failed to produce the raw data underlying the studies to the CUNY investigators.

On October 13, 2023, Cassava's stock fell from $17.54 per share to $14.86 per share, a drop of approximately 15.28%.

IV.    **Baker Initiates *Cassava II* and Bozorgi Seeks Intervention and Leave to Amend**

On February 2, 2024, Baker sued Cassava and two of its officers for publishing the press releases and filing its Form 10-K, which Baker alleged were materially false and misleading in light of the *Science* article.  Baker pleaded a class period spanning from August 18, 2022, when Cassava published the first press release mentioned in her complaint, through October 12, 2023, when *Science* published its article on Dr. Wang's alleged manipulation of the simufilam studies.

4

Baker, who purchased four shares of Cassava stock on September 30, 2022, attributed the October 13 price drop to Cassava's "wrongful acts and omissions." Doc. 1 ¶ 36 (N.D. Ill. Feb. 2, 2024). Pursuant to the PSLRA, Baker published notice of her lawsuit so other investors would have the opportunity to move to become Lead Plaintiff. Subsequent to this notice and on the April 2, 2024 deadline, two investors, Amjad Fraitekh and John Kreilich, requested that the Court appoint them as Lead Plaintiff.

Before Baker filed suit, Bozorgi discussed with opposing counsel on December 8, 2023, the prospect of amending the *Cassava I* consolidated complaint to include the *Science* article. *See Cassava I*, No. 21 C 751, Doc. 129-4 at 5–6 (W.D. Tex. Feb. 22, 2024). On February 22, 2024, Bozorgi filed an opposed motion to supplement the consolidated complaint to include allegations related to the October 13 *Science* article and expand the class period through October 12, 2023. *See id.*, Doc. 129 (W.D. Tex. Feb. 22, 2024). Cassava filed its opposition on March 7, 2024, and Bozorgi replied on March 14, 2024. As of the date of this Opinion, the court has not ruled on the motion.

On March 8, 2024, pursuant to Judge Ezra's order, Bozorgi filed an advisory informing the *Cassava I* court of this litigation. Then, on March 20, 2024, Bozorgi moved to intervene in this case, transfer it to the Western District of Texas, and strike the Lead Plaintiff deadline of April 2, 2024. The Court subsequently stayed appointment of a Lead Plaintiff in this action until its resolution of Bozorgi's motion.

## LEGAL STANDARD

A movant may intervene as a matter of right if he satisfies the factors set out in Federal Rule of Civil Procedure Rule 24(a)(2): "(1) timely application; (2) an interest relating to the subject matter of the action; (3) potential impairment, as a practical matter, of that interest by the

disposition of the action; and (4) lack of adequate representation of the interest by the existing parties to the action." *Shea v. Angulo*, 19 F.3d 343, 346 (7th Cir. 1994). "'A motion to intervene as a matter of right, moreover, should not be dismissed unless it appears to a certainty that the intervenor is not entitled to relief under any set of facts which could be proved under the complaint.'" *State v. City of Chicago*, 912 F.3d 979, 984 (7th Cir. 2019) (quoting *Reich v. ABC/York-Estes Corp.*, 64 F.3d 316, 321 (7th Cir. 1995)). The Court accepts "as true the non-conclusory allegations of the [purported intervenor's] motion." *Reich*, 64 F.3d at 321.

A movant may obtain permissive intervention if he "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(A). "In exercising its discretion [to grant intervention], the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed R. Civ. P. 24(b)(3).

## ANALYSIS

### I.     Motion to Intervene

Baker argues that Bozorgi cannot intervene as of right because he did not timely file his motion to intervene and because he lacks an interest in this action. She further asserts that because Bozorgi does not have an interest in the litigation, the third and fourth requirements fail *a fortiori*. The Court considers these points in turn.

### A.     Timeliness

To evaluate whether a purported intervenor timely filed his motion, courts "look to four considerations: (1) the length of time the intervenor knew or should have known of his interest in the case; (2) the prejudice caused to the original parties by the delay; (3) the prejudice to the intervenor if the motion is denied; and (4) any other unusual circumstances." *Cook Cnty. v.*

*Texas*, 37 F.4th 1335, 1341 (7th Cir. 2022). "This is essentially a reasonableness test: 'potential intervenors need to be reasonably diligent in learning of a suit that might affect their rights, and upon so learning they need to act reasonably promptly.'" *Ali v. City of Chicago*, 34 F.4th 594, 599 (7th Cir. 2022) (quoting *Lopez-Aguilar v. Marion Cnty. Sheriff's Dept.*, 924 F.3d 375, 984 (7th Cir. 2019)). With respect to the first factor, the passage of time, a movant must "move promptly to intervene as soon as it knows or has reason to know that its interests might be adversely affected by the outcome of the litigation." *Heartwood, Inc. v. U.S. Forest Serv.*, 316 F.3d 694, 701 (7th Cir. 2003). Whether a court should deny a motion to intervene as untimely is a decision committed to the district court's discretion. *Holland v. Sterling Enters., Inc.*, 777 F.2d 1288, 1293 (7th Cir. 1985).

Baker ties her untimeliness argument to the PSLRA's notice period, faulting Bozorgi for not filing his motion to intervene for 47 days after she filed this case. Baker argues that Bozorgi knew of this case as early as February 29, 2024, when he filed a notice of a related case on *Cassava I*'s docket. *Cassava I*, No. 21 C 751, Doc. 142 (W.D. Tex. Feb. 29, 2024). Baker faults Bozorgi for "wait[ing] another three weeks" to file his motion to intervene, which she contends prevented the Court from promptly appointing a Lead Plaintiff at the end of the PSLRA's 60-day notice period and ground this case to "an effective standstill." Doc. 36 at 8 (emphasis omitted) (citing *Reid L. v. Ill. State Bd. of Educ.*, 289 F.3d 1009, 1018 (7th Cir. 2002) ("The purpose of the [timeliness] requirement is to prevent a tardy intervenor from derailing a lawsuit within sight of the terminal.")).

Here, however, "the terminal" for this case is nowhere in sight. Indeed, Bozorgi's motion is about as timely as a motion can be in the context of dueling complex securities litigations. The date on which Baker places so much weight—the deadline for a putative class member to

seek Lead Plaintiff status—is but an early stop on this case's path to any final "terminal," whether it's an unfavorable ruling on a motion to dismiss, settlement agreement, or jury verdict. Indeed, *Reid L.*, the only case that Baker cites, shows why Bozorgi is not "a tardy intervenor" against whom this prong is meant to protect. 289 F.3d at 1018. In that case, the court held that the purported intervenor's motion to intervene was untimely when the third party "filed [it] nine years after the . . . litigation began; more than two years after the district court's opinion finding the [defendant] liable . . . and more than ten months after the court approved the settlement agreement." *Id.* This case has not nearly progressed to such a point where Bozorgi's intervention would be as obviously untimely as the delayed effort the purported intervenor made in *Reid L.* Rather, a period of 47 days does not constitute an unreasonable delay warranting the denial of a motion to intervene. *See, e.g.*, *Reich*, 64 F.3d at 321 (motion to intervene was timely despite "a delay of approximately nineteen months in filing the petition to intervene" and a 33-day delay from when purported intervenors learned their interests were at risk), *Jeffries v. Swank*, 317 F.R.D. 543, 551 (N.D. Ill. 2016) (motion to intervene was timely when intervenor "filed his motion within two months of becoming aware that" his interests were impacted by the litigation and "the delay between [plaintiff's] knowledge that he had an interest in this case and his actual filing was negligible").

The second factor, whether the original parties would face prejudice, is the "most important consideration." *Nissei Sangyo Am., Ltd. v. United States*, 31 F.3d 435, 439 (7th Cir. 1994). This factor cuts against finding Bozorgi's motion untimely. Almost no prejudice will result for either party. Cassava, for its part, will not suffer from a delay since it promises to file a motion to dismiss regardless of whether Bozorgi intervenes. And Baker fails to articulate any specific prejudice that she will suffer aside from the deadline to appoint a lead plaintiff in this

action, which the Court has already stayed: Bozorgi's intervention thus causes her no further prejudice other than that which she has already suffered. Thus, this prong counsels in favor of finding Bozorgi's motion timely.

The third factor, prejudice to the intervenor, indicates that Bozorgi's motion is timely. As the Court discusses below, Bozorgi has an interest in this case and has already expended considerable effort litigating similar legal issues against Cassava in the Western District of Texas. Indeed, Bozorgi has already survived a motion to dismiss in *Cassava I. See* No. 21 C 751, Doc. 104 (W.D. Tex. May 11, 2023). Without representation in this case, Bozorgi might suffer prejudice from contradictory rulings on similar legal issues. *Cf. Melcher v. Cent. States Enters.*, No. 21 C 409, 2024 WL 514575, at *9 (N.D. Ind. Feb. 8, 2024) ("[T]he contracts and proposed complaints between the parties are virtually the same, and thus, it is likely the outcome of any motion against the Intervenors' pleadings would be consistent with the outcome in Plaintiff's case. And regardless, as the Court sees it, the Intervenors would benefit from having consistency in the adjudication of their claims by the same judge, rather than having to potentially litigate the issue before another judge, unfamiliar with the complex facts of this case and the contracts at issue.").

Finally, the fourth factor, unusual circumstances, also counsels in favor of finding Bozorgi's motion timely. Bozorgi's counsel, which represents him in *Cassava I* as well as the instant motion to intervene, is highly involved in the day-to-day management of *Cassava I* given Bozorgi's role as Lead Plaintiff there. In the time between when Baker filed this case on February 2, 2024, and Bozorgi filed his motion to intervene on March 20, 2024, Bozorgi filed a 29-page motion to supplement *Cassava I*'s consolidated complaint, *Cassava I*, No. 21 C 751, Doc. 129 (W.D. Tex. Feb. 22, 2024), a 33-page motion for class certification, *id.*, Doc. 148

(W.D. Tex. Mar. 13, 2024), and a 15-page reply brief supporting the consolidated complaint, *id.*, Doc. 149 (W.D. Tex. Mar. 14, 2024).  Less than a week after this flurry of motion practice ended, Bozorgi filed a well-written 18-page motion to intervene, transfer, and strike the Lead Plaintiff deadline in this case.  Doc. 13 (N.D. Ill. Mar. 20, 2024).  The Court is not blind to Bozorgi's attorneys' efforts in *Cassava I* and how their attention there might impact—by a matter of days—his ability to file a motion to transfer here.  Thus, to any extent that the Court might find fault in Bozorgi seeking to intervene 47 days after Baker filed her case, versus 20 days, or 30 days, or 35 days, the Court finds that unusual circumstances excuse any delay that might exist.

The Court thus finds that Bozorgi timely filed his motion to intervene.

**B.    Interest Relating to the Case**

"Whether an applicant has an interest sufficient to warrant intervention as a matter of right is a highly fact-specific determination."  *Sec. Ins. Co. of Hartford v. Schipporeit, Inc.*, 69 F.3d 1377, 1380–81 (7th Cir. 1995).  The interest analysis "focus[es] on the issues to be resolved by the litigation and whether the potential intervenor has an interest in those issues."  *Id.*  The Seventh Circuit has said "that the potential intervenor's interest [must] be a 'direct, significant legally protectable' one."  *Reich*, 64 F.3d at 322 (quoting *Am. Nat'l Bank v. City of Chicago*, 865 F.2d 144, 146 (7th Cir. 1989)).  At the same time, it has also recognized "statements of the Supreme Court as encouraging liberality in the definition of an interest."  *Meridian Homes Corp. v. Nicholas W. Prassas & Co.*, 683 F.2d 201, 204 (7th Cir. 1982).

Baker argues that Bozorgi lacks a cognizable interest in this case because the court in *Cassava I* has not (yet) granted his motion to supplement the consolidated complaint in that action to expand the class period to cover the period that Baker alleges in her complaint.

10

According to Baker, the fact that Bozorgi's complaint (as of now) does not encompass the same allegations and same time period as her complaint means that he does not have an interest in this case. Bozorgi argues that his status as Lead Plaintiff in *Cassava I* gives him an interest in any claims related to Cassava's allegedly misleading conduct even if his complaint does not yet specifically address certain instances of such conduct, and that in any event Baker's complaint stems from the same misleading conduct he is seeking to vindicate in *Cassava I*. Bozorgi also argues that he has an interest in this case deriving from Cassava's insurance and other funds that might be used to satisfy competing judgments in *Cassava I* and *Cassava II*.

The lone case that Baker cites to support her argument, *Federal Insurance Co. v. Illinois Funeral Director's Association*, No. 09 C 1634, 2009 WL 2252200 (N.D. Ill. July 29, 2009), shows why Bozorgi's second argument—that he has an interest in this suit based on his potential future claim to "any insurance coverage and funds available for satisfying a settlement or judgment," Doc. 37 at 12—is unavailing, but it does no work to show why Bozorgi's status as Lead Plaintiff fails to give him an interest in the underlying issues that Baker seeks to resolve in this litigation. In *Federal Insurance*, the court determined that the intervenor had no interest in the underlying dispute when its claim depended on the intervenor "prevail[ing] on their claims against the defendants in the [separate] Action" and "the court in the instant action rul[ing] in favor of Defendants and find[ing] that the proceeds of the Policy are payable." *Federal Ins. Co.*, 2009 WL 2252200, at *3. The court determined that this "interest" was "entirely speculative and [] contingent on a finding of liability and damages in the [separate] Action." *Id.* Similarly, for Bozorgi to have a claim to "any insurance coverage and funds available for satisfying a settlement or judgment," Doc. 37 at 12, he must win (or settle) *Cassava I*. The Court cannot find that Bozorgi has an interest based on such a speculative outcome.

11

Baker also complains—without any supporting citations—of what she styles as Bozorgi's attempted "land grab [that] would concurrently expand the *Cassava I* Class period by 443 days . . . while denying Cassava investors who purchased during the *Cassava II* Class Period any opportunity to seek Class leadership." Doc. 36 at 11. But the Court returns to the fact that the statements on which she bases her claims are at least arguably grounded in the same core events that Bozorgi pleaded in the *Cassava I* consolidated complaint. *Compare* Doc. 1 ¶¶ 4–5 (N.D. Ill. Feb. 2, 2024) (discussing August 2021 petition halting phase 3 simufilam trials and Cassava's denial of the petition's allegations), *with Cassava I*, No. 21 C 751, Doc. 68 ¶¶ 316–22 (W.D. Tex. Aug. 18, 2022) (discussing Cassava's response to the Citizen Petition); *see Meridian Homes Corp.*, 683 F.2d at 204 (the Supreme Court has encouraged "liberality in the definition of an interest."). Moreover, Baker's argument is misplaced—the Court does not decide here whether it should consolidate this case with *Cassava I*. It only determines whether Bozorgi has a legally cognizable interest in the claims Baker brings here.

As to that interest, Bozorgi stands on firmer ground when he argues that his status as Lead Plaintiff in *Cassava I* gives him an interest in the claims that Baker seeks to bring in this case. When the court in *Cassava I* appointed him Lead Plaintiff, it found that he was the "most capable of adequately representing the interests of class members" for the purposes of the litigation. 15 U.S.C. § 78u-4(a)(3)(B)(i). The PSLRA's use of the phrase "interests" is unhelpful in determining how to define an "interest" under Rule 24. However, courts tend to agree that it is within the Lead Plaintiff's power "to control the management of the litigation as a whole, and it is within the lead plaintiff's authority to decide what claims to assert on behalf of the class." *In re Boeing Co. Aircraft Sec. Litig.*, No. 19 C 2394, 2019 WL 6052399, at *10 (N.D. Ill. Nov. 15, 2019) (quoting *In re Bank of Am. Corp. Sec., Derivative & Emp. Ret. Income Sec.*

12

*Act (ERISA) Litig.*, No. 09 MDL 2058, 2010 WL 1438980, at *2 (S.D.N.Y. Apr. 9, 2010)).

Importantly, Bozorgi's status as Lead Plaintiff means that he does not need to have personal

standing to pursue all claims available to class members. *See Hevesi v. Citigroup Inc.*, 366 F.3d

70, 82 n.13 (2d Cir. 2004) ("[A]ny requirement that a different lead plaintiff be appointed to

bring every single available claim would contravene the main purpose of having a lead

plaintiff—namely, to empower one or several investors with a major stake in the litigation to

exercise control over the litigation as a whole."); *In re Bank of Am. Corp.*, 2010 WL 1438980, at

*2 ("[W]hile it is true that the Lead Plaintiffs have not yet asserted claims on behalf of holders of

debt securities or options, they advise that they are still assessing whether to do so. . . . Lead

Plaintiffs should be given the opportunity to make this decision."). If Bozorgi's "interests" as

Lead Plaintiff under the PSLRA include pursuing the same claims for the class period that Baker

pleaded in her complaint, then he obviously has an "interest" for the purpose of Rule 24. *See*

*Schipporeit, Inc.*, 69 F.3d at 1380–81 (Rule 24 analysis "focus[es] on the issues to be resolved by

the litigation and whether the potential intervenor has an interest in those issues.").

   Baker argues that Bozorgi cannot have any such interest, primarily because Bozorgi did

not claim to be a member of the class period she alleges. However, Bozorgi does not need to

personally hold every potential claim for him to properly assert them as Lead Plaintiff. And a

closer examination of Baker's claims shows that they are rooted in the same alleged

misrepresentation as Bozorgi's claims in *Cassava I*, even if Cassava made the specific statements

of which Baker complains outside of *Cassava I*'s class period. Both cases have at their core

Cassava's development of simufilam, its efforts to study the effects of the drug long-term, and

the alleged data manipulation and scientific misconduct of Cassava's researcher, Dr. Wang. It is

irrelevant that after Bozorgi became Lead Plaintiff and filed the consolidated complaint in

*Cassava I* that the simufilam trials continued (with disputed validity); that Cassava issued additional press releases touting the results of these purported studies and noted its optimism in public filings; and that *Science* published its article reporting on CUNY's investigation into Dr. Wang that accused him of "long-standing and egregious misconduct in data management and record keeping," Doc. 1 ¶ 35 (N.D. Ill. Feb. 2, 2024), for the simple reason that Bozorgi "could not, of course, have alleged false statements that would be made in the future." *Ontario Teachers' Pension Plan Bd. v. Teva Pharm. Indus. Ltd.*, No. 3:17 C 558, 2020 WL 1181366, at *9 (D. Conn. Mar. 10, 2020). That Baker alleged a class period subsequent to *Cassava I*'s does not mean that the cases are unrelated, and it is plain that "the conduct alleged in [Baker's] complaint is a clear continuation of the conduct alleged in the [consolidated complaint] in [*Cassava I*]." *Id.* at *8. This being so, "[t]he success of [Baker's] complaint will depend on many of the same facts that [Bozorgi] in [*Cassava I*] must prove to sustain [his] claims as asserted in [*Cassava I*'s consolidated complaint]." *Id.* In light of the similarities between Baker's litigation and *Cassava I*, the Court finds that Bozorgi could legally maintain Baker's claims as Lead Plaintiff and therefore has an interest in this case.

Ultimately, Bozorgi has an interest in this case because of his status as Lead Plaintiff in *Cassava I*. Becasue Baker solely relies on a lack of such interest to argue against the third and fourth intervention factors—she did not respond to Bozorgi's substantive arguments—the Court determines that Baker has waived any alternative argument. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument—as the [plaintiff has] done here—results in waiver.").

Finding that all Rule 24(a)(2) factors are present, the Court grants Bozorgi's motion to intervene as of right.

## II.     Motion to Transfer

Next, the Court considers Bozorgi's request that the Court transfer this case to the Western District of Texas.  Courts may transfer venue to any other district or division where an action may have been brought "[f]or the convenience of the parties and witnesses, in the interest of justice."  28 U.S.C. § 1404(a).  To qualify for transfer under § 1404(a), Bozorgi must demonstrate that "(1) venue is proper in this district; (2) venue is proper in the transferee district; (3) the transferee district is more convenient for both the parties and the witnesses; and (4) transfer would serve the interest of justice."  *Gueorguiev v. Max Rave, LLC*, 526 F. Supp. 2d 853, 856 (N.D. Ill. 2007).  The Court has discretion over the transfer decision because the "weighing of factors for and against transfer necessarily involves a large degree of subtlety and latitude."  *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986).

Baker argues against transferring this case on the basis that the Court will deny Bozorgi's motion to intervene.  Because the Court granted Bozorgi's motion, Baker's argument fails. However, for the sake of completeness, the Court analyzes the transfer factors and finds that it is appropriate to transfer this case to the Western District of Texas.

As an initial matter, the Court finds that venue is proper in the Western District of Texas. Cassava is headquartered in that District; as the Court just noted, many of the core events at the heart of the alleged security fraud, namely misleading statements, took place there; and *Cassava I* is already pending in that District.  This factor supports transfer.  *See* 28 U.S.C. § 1391(b) (venue is appropriate in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located" or in " a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred").

15

Next, the Court finds that Baker's choice of forum is not entitled to significant deference. While courts typically give a plaintiff's choice of forum substantial deference, the deference diminishes "when a case is brought as a class action, as here." *Dale v. Deutsche Telekom AG*, No. 22 C 3189, 2022 WL 6123365, at *3 (N.D. Ill. Oct. 7, 2022). And "a plaintiff's choice of forum is afforded less deference when another forum has a stronger relationship to the dispute or when the forum of plaintiff's choice has no connection to the material events." *Amorose v. C.H. Robinson Worldwide, Inc.*, 521 F. Supp. 2d 731, 735 (N.D. Ill. 2007). As Baker's and Bozorgi's respective complaints allege, none of the "material events" occurred in Illinois, and a substantial number of these events—if not all of them—occurred in or stemmed from decisions Cassava made in the Western District of Texas. *Id.*; *see* Doc. 1 ¶¶ 22–33 (N.D. Ill. Feb. 2, 2024) (quoting allegedly misleading press releases Cassava issued); *Cassava I*, No. 21 C 751, Doc. 68 ¶¶ 44, 55, 73 (W.D. Tex. Aug. 18, 2022) (noting Cassava's location in Texas). Accordingly, the Court gives little deference to Baker's choice of forum.

Third, the Court finds that litigating in the Western District of Texas will be more convenient for the parties and the witnesses. Cassava is headquartered there, its officers reside there, and much of the documentary and other evidence is already present there. This factor supports transfer. *See George & Co. LLC v. Target Corp.*, No. 20 C 6219, 2021 WL 2948910, at *4 (N.D. Ill. July 14, 2021) ("Additionally, most relevant witnesses and documents are located in New York and make that district a more convenient forum for the parties.").

Fourth, transfer will serve the interest of justice. When considering the interest of justice component of § 1404(a), courts consider factors such as the likelihood of a speedy trial, each court's familiarity with the applicable law, the desirability of resolving controversies in each locale, and the relationship of each community to the controversy. *Rsch. Automation, Inc. v.*

16

*Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010).  Here, Texas has a stronger connection with the case than Illinois because Cassava has its headquarters there.  *George & Co.*, 2021 WL 2948910, at *5 (N.D. Ill. July 14, 2021) ("New York has a stronger connection to the claims since cases involving similar claims are currently pending there and because Plaintiff is a New York company.").  And, given the pendency of *Cassava I* and its relatively advanced status as compared to this litigation, judicial economy will also benefit from transferring the case to a District with deeper knowledge of the events at issue in these cases.  *See Aliano v. Quaker Oats Co.*, No. 16 C 3087, 2017 WL 56638, at *3 (N.D. Ill 2017) ("Cases in which the interest-of-justice element may be determinative include those where there is related litigation in a forum where consolidation is feasible." (internal quotation marks omitted)); *Villalobos v. Cooper Tire & Rubber Co.*, No. 05 C 391, 2005 WL 8179132, at *2 ("The interests of judicial economy are clearly served by transferring this case because potential consolidation would avoid duplicative litigation of both factual and legal issues and would avoid the possibility of contradictory outcomes.").  Thus, this factor indicates the Court should grant Bozorgi's motion to transfer.

Because all the transfer factors counsel in favor of transfer to the Western District of Texas, in the exercise of its discretion the Court grants Bozorgi's motion to transfer this case to the Western District of Texas.  *See Coffey*, 796 F.2d at 219.

### III.    Motion to Vacate Lead Plaintiff Deadline

Bozorgi's final motion is for the Court to vacate the Lead Plaintiff deadline of April 2, 2024, and strike any pending applications for appointment as Lead Plaintiff in this case. Although Baker makes no argument beyond Bozorgi's lack of interest, the Court denies Bozorgi's motion for the simple reason that it believes the transferee court will be best-suited to decide whether Baker properly filed this case separately from *Cassava I*, or if the enlargement of

the class will require republication of the PSLRA notice and reselection of a lead plaintiff.  *See Teva Pharm. Indus.*, 2020 WL 1181366, at \*10 ("When a complaint is amended, courts must determine whether republication of such a notice—and relitigation of an appropriate lead plaintiff—is warranted under the PSLRA.").  Allowing the transferee court to adjudicate this question is especially important because Judge Ezra will likely consolidate this action with *Cassava I*, and he will be better positioned to make this decision.  *See Cassava I*, No. 21 C 751, Doc. 58 ¶ 5 (W.D. Tex. June 30, 2022) ("Any other actions now pending or hereafter filed in this District that arise out of the same facts and claims as alleged in the above-listed related actions shall be consolidated into the Consolidated Action for all purposes once the Court is informed of them.").  Accordingly, the Court denies without prejudice Bozorgi's motion to vacate the April 2, 2024 lead plaintiff deadline.  The Court indefinitely continues its order staying appointment of a Lead Plaintiff in this action until the transferee court determines that it should dissolve the stay.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Bozorgi's motion to intervene, transfer this case to the Western District of Texas, and vacate the lead plaintiff deadline [12].  The Court allows Bozorgi to intervene in this case.  The Court further orders the Clerk to transfer this case to the U.S. District Court for the Western District of Texas.  The Court denies without prejudice Bozorgi's motion to vacate the April 2, 2024 lead plaintiff deadline. The Court indefinitely continues its order staying appointment of a Lead Plaintiff in this action until the transferee court determines that it should dissolve the stay.

Dated: May 29, 2024

_____
SARA L. ELLIS
United States District Judge

18